George S. Fisher, Appellant, *v.* John M. Stevens, Appellee.

APPEAL FROM LA SALLE.

16   397
23a  506
16   397
35a  462
16   397
41a  329
16   397
70a  244

A party is liable for materials obtained for his use by another, if he voluntarily availed himself of the use of the materials, or in any manner ratified the act of obtaining them; and these are questions for a jury to settle.

The right of a party to ask instrucitons must have some limit, and the Supreme Court will not sanction the abuse of it.

This case was tried before H. G. Cotton, County Judge of LaSalle, and a jury, at December term, 1854, of that Court.

Glover and Cook, for Appellant.

Bushnell and Gray, for Appellee.

Skinner, J.    Stevens sued Fisher before a justice of the peace of La Salle County, to recover the value of a quantity of bricks.

The cause was tried by jury, and a verdict was returned against Fisher for sixty dollars, upon which judgment was rendered.    Fisher appealed to the La Salle county court, where

the cause was again tried by jury, and a verdict returned against Fisher for eighty dollars, upon which judgment was rendered. Fisher appealed to this court.

The main question presented by the record is, whether the evidence is sufficient to warrant the verdict in the county court. The bill of exceptions purports to set out the *substance* of the evidence, and from it we gather that Fisher was erecting a building called the " Bank buildings," in the city of Ottawa ; that he employed one Charranell as superintendent of instruction, and one Weathers as master-builder ; that Fisher was frequently present during the progress of the work, but not every day ; that during the progress of the work, a quantity of hard-burned bricks was required for the building, the bricks provided being unsuited to the purpose for which they were needed ; that Weathers went to Stevens, who was a brick-maker in or near Ottawa, and obtained the bricks *for* Fisher, stating to Stevens that Fisher had sent him for them and wanted them for his bank buildings ; that the bricks were hauled away from Stevens' yard to the bank buildings by teams under the direction of Weathers, and were used in said buildings ; that Weathers hired hauling for the buildings, and sometimes paid for the hauling, and sometimes Charranell gave orders for the same, and that the orders so given were paid at the bank; that during the construction of the buildings, one Hassack proposed to Charranell to furnish lime for the buildings, and that afterwards Weathers examined the lime, agreed to take it, and directed it to be charged to Fisher ; that the lime was furnished for the buildings ; that Fisher had examined the bill for the lime and made no objection to it, though it was not yet paid ; that the lime was furnished in pursuance of an understanding with Charranell ; that one Pierce delivered lime to Weathers for the buildings, and charged it to Fisher ; that he presented his bill for the lime to Fisher, and Fisher directed his clerk to let Pierce have the amount of it, but that no final settlement was then made ; that Charranell had been to Pierce for lime, and stated that he would send for what he wanted ; that Pierce let Weathers have a large amount of lime, in consequence of the conversation with Charranell, but that he would have let Weathers had a small amount and charged it to Fisher ; that one Feg worked on the buildings during the whole time the work was going on ; that Weathers was the master-builder, and gave directions to the workmen in the construction of the buildings ; that Weathers hired Feg and gave him a ticket which he took to the teller of the bank and got his pay ; that the bricks were hauled by one Brady, who was employed with his team in hauling for the buildings ; that one Hannehan worked on the buildings ; that Weathers hired him, sometimes paid him, and sometimes gave

him a ticket to the teller of the bank for his pay ; that Weathers frequently got things for the buildings, such as lime, sand, etc., that Fisher was a banker at Ottawa.

All the witnesses stated that they did not know of Fisher giving Weathers authority to purchase materials for the bank buildings. It was also proven that there were eight thousand bricks furnished, and that they were worth ten dollars per thousand.

Fisher introduced Charranell, who testified in substance, that he was authorized by Fisher to purchase materials for the buildings ; that he acted as Fisher's agent in so purchasing, and that no other person was acting in the matter as agent for Fisher ; that he did not know of any other person being so authorized ; that he sometimes purchased materials and sent Weathers for them, but never authorized Weathers to purchase materials on Fisher's account ; that some time before the buildings were finished, he discovered there were not hard bricks enough to finish the buildings ; that Weathers said Stevens had the kind of bricks they wanted ; that Charranell told Weathers that Fisher would not purchase of Stevens ; that they had had difficulty ; that Weathers said he could get them on his own account, and that he (Charranell) replied that he did not think Fisher would consent to have them used in the buildings ; that soon after, he saw Brady hauling bricks ; that he did not know the bricks were procured of Stevens until they were partly used, and that then he supposed the bricks were procured on Weathers' account ; that the bricks were credited to Weathers on Fisher's books, and that he (Charranell) had no information that they were charged to Fisher until they were all laid up into the buildings ; that Fisher had told Weathers that he would not consent to purchase bricks of Stevens ; that he took charge of the buildings soon after their commencement, and continued until they were finished.

A new trial should not be granted for want of evidence to support the verdict, unless the verdict appears clearly and manifestly wrong. The jury must judge of the credibility of witnesses, and of the weight and force of circumstances proved.

Fisher is liable if the bricks were got by his authority, express or implied, or if they were got without authority, and he afterwards voluntarily availed himself of their use, or in any manner ratified the act of Weathers. Chitty on Con. 176, and Theobald on Pr. and Ag. 230, 231 ; *North River Bank* v. *Aynear et al.,* 3 Hill, 262. *Williams et al.* v. *Mitchell,* 17 Mass. 97 ; *Shiras* v. *Morris et al.,* 8 Cow. 60 ; *Moss* v. *The Ross Lead Mining Company,* 5 Hill, 137 ; 17 Vt. R. 449 ; *Storhard* v. *Aull and Morehead,* 7 Mo. R. 318.

Weathers was permitted to act in such manner as, under all the circumstances, to justify the supposition of authority from

Fisher ; the act was for the benefit of Fisher, and, under the evidence, the jury might have found that Fisher availed himself of the benefit of the materials, knowing they were obtained for him.

A difficulty existed between Fisher and Stevens; he needed the kind of material Stevens had ; they were obtained for him by his master-builder, were used for his benefit, and two juries have found the facts against him. Substantial justice seems to have been done, and the evidence fails to show that Fisher has sustained a substantial injury. There is no evidence of *payment* to Weathers, and if that fact had existed, it is to be presumed it would have been proven, for the case seems to have been strongly contested on the part of Fisher.

Numerous instructions were asked upon the trial, some of which were given, and some refused. Fisher asked for sixteen several instructions, seven of which were given as asked, three given after qualifications by the court, and the balance refused.

The only question of law was as to the liability of Fisher to pay for bricks obtained for him, and used for his benefit. The right to demand instructions must have some limit, and we are not disposed to sanction its abuse.

Sixteen instructions in this case could not have been required on the part of the defendant, for the purpose of merely enlightening the jury upon the law of the case, and were well calculated to confuse and mislead them.

As we think the court correctly instructed, both for the plaintiff and defendant, so far as conducive to justice and a fair trial, we do not deem it our duty to enter upon an investigation of the law of the instructions refused. *Prior* v. *White*, 12 Ill. 261.

*Judgment affirmed.*

SCATES, C. J., dissents.