## AARON B. SEARING *et al.*

*v.*

## JOSIAH R. BUTLER *et al.*

| 69 | 575 |
|---|---|
| 23a | 506 |
| 69 | 575 |
| 46a | 515 |
| 69 | 575 |
| 107a [1] | 64 |
| 69 | 575 |
| 208 | [4]140 |

1. AGENCY—*ratification inferred from circumstances.* Where an agent exceeds his authority, there need not be an express ratification to bind the principal, but a subsequent assent may be inferred from circumstances, which the law considers equivalent to an express ratification.

2. Thus, where a party directed a commission merchant to sell a lot of wheat for him at not less than $1.05 per bushel, with the privilege to the seller to deliver the same at his option, at any time during the current year, and the merchant sold the same at $1.02½ per bushel, and immediately notified the principal, who made no reply, and expressed no intention to disaffirm the sale until about a month afterwards, when wheat had advanced considerably: *Held,* that a ratification of the sale was properly inferred from the circumstances.

3. SAME—*liability of principal to agent.* Where a commission merchant, by direction of his principal, sold for the latter 5000 bushels of wheat, to be delivered at any time during the current year, at the seller's option, and after an advance in the price the principal refused to stand to the contract, and the merchant settled with the buyer by paying him the difference between the contract price and the market value, the principal being unknown to the purchaser: *Held,* that the principal was liable to his agent for the sum so paid by him, and also for his commissions.

4. PLEADING AND EVIDENCE—*allegation as to time not necessary to be proved as laid.* Where a party selling grain for another, who refuses to deliver, settles with the purchaser, paying him the difference between the contract and market prices, alleged in his declaration, in a suit against the principal, that he was compelled to and did pay such difference on a certain day: *Held,* that the allegation was not material as to time, and therefore not necessary to be proved as laid.

APPEAL from the Circuit Court of Livingston county; the Hon. CHARLES H. WOOD, Judge, presiding.

This was an action of assumpsit, by Josiah R. Butler and Windsor P. Freeman, partners, against Aaron B. Searing and Joseph R. Searing, partners. The declaration contained three special and the common counts.

The first count averred, in substance, that plaintiffs were commission merchants in Chicago, on July 29, 1871, and that defendants employed plaintiffs to sell for them in Chicago 5000 bushels of No. 2 spring wheat, to be delivered by defendants at any time, at their option, during the year 1871; that pursuant to such employment, plaintiffs, as commission men, sold the said wheat, to be so delivered, at the price of $1.02½ per bushel; that defendants did not, at any time during the year 1871, deliver said wheat, and by the custom of trade in Chicago, with the knowledge of defendants, plaintiffs were personally responsible for the performance by defendants of the sale; and that on December 30, 1871, wheat having advanced in the Chicago market, and in consequence of the refusal of the defendants to deliver the wheat, plaintiffs were compelled to pay the purchaser of the wheat the difference between the selling price and the then market price, which was 17 cents per bushel, etc.

The second count alleged, in substance, that plaintiffs, at the request of defendants, on July 31, 1871, sold in the Chicago market, at $1.02½ per bushel, 5000 bushels No. 2 spring wheat, on behalf of defendants, with the privilege on the part of defendants of delivering the same to the purchaser at any time during the year 1871; that plaintiffs acted as commission merchants in the transaction, and, by the custom of the trade, were personally responsible to the purchaser for the delivery of the grain according to the terms of the sale; that defendants refused at all times during the year 1871 to deliver said grain, so that on December 30, 1871, plaintiffs did buy 5000 bushels No. 2 spring wheat to fill said contract, and paid therefor $1.19½ per bushel, that being the market price that day, etc.

The third count alleged, in substance, that on July 31, 1871, defendants, believing that the market price of No. 2 spring wheat in Chicago was higher than it would be later in the season, desired to sell in that market 5000 bushels of that grain, to be delivered at any time, at defendants' option,

during the year 1871, and hence authorized plaintiffs, as commission men, to make such sale at the then market price; that the plaintiffs made such sale at $1.02½ per bushel, that being the highest price on such terms of delivery; that it was the custom in the trade to hold the commission men responsible personally for the contract as well as the *margin* or difference between the contract price and the market price of grain sold; that the price of wheat advanced, and plaintiffs kept up the margins to and until the close of the year 1871, when defendants should have delivered the wheat, and on December. 31, 1871, such wheat was worth $1.19½ per bushel, and defendants on that day failing and refusing to deliver said wheat, the plaintiffs paid the purchaser the difference between the selling price and the price on the day it should have been delivered, etc.

The defendants pleaded the general issue. A trial was had, resulting in a judgment in favor of the plaintiffs for $727.48, and the defendants appealed.

Mr. L. E. PAYSON, for the appellants.

Messrs. PILLSBURY & LAWRENCE, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On the 29th day of July, 1871, Freeman, one of the firm of Butler & Freeman, the appellees, commission merchants in Chicago, received an order from Searing Bros., the appellants, at Chatsworth, Ill., where the latter resided, to sell for appellants in Chicago 5000 bushels of No. 2 spring wheat, "seller the year," that is, the seller to deliver the grain at his option at any time during the current year. The order was telegraphed to the firm at Chicago, and on the Monday following, July 31, 1871, appellees sold the wheat for appellants, and notified them, by telegraph and by letter of that date, that they had done so, at $1.02½ per bushel. From that day wheat declined in that market until August 2, on which day

37—69TH ILL.

578     SEARING *et al. v.* BUTLER *et al.*     [Sept. T.

Opinion of the Court.

it touched 94¾ cents per bushel upon that time contract. The price then turned upward, and advanced steadily until the last day of December of that year, when it reached $1.19½ per bushel.

This suit was brought by appellees to recover their commissions and the difference between the price the wheat was sold for July 31, and the highest price afterward during the year, or on the 30th of December, appellants having failed to deliver, and appellees having made a settlement of the contract with the parties who purchased of them. The plaintiffs recovered a judgment for $727.48, from which the defendants have appealed.

Appellants resist a right of recovery, on the ground that there was a violation of their order for the sale, which they claim was limited to $1.05 per bushel.

As to this limit there is some dispute between the parties, but assuming it as a fact, then the appellants were not bound by the sale at $1.02½; yet they might subsequently ratify it, and be bound by the sale, as if there had been no limit affixed.

We find in the record abundant evidence of a ratification of the sale. There need not be an express act of ratification, but a subsequent assent may be inferred from circumstances, which the law considers equivalent to an express ratification. The doctrine on this subject is thus declared in *Ward* v. *Williams*, 26 Ill. 451 : " In general, where an agent is authorized to do an act, and he transcends his authority, it is the duty of the principal to repudiate the act so soon as he is fully informed of what has been thus done in his name by the agent, else he will be bound by the act as having ratified it by implication ; but when a stranger, in the name of another, does an unauthorized act, the latter need take no notice of it, although informed of the act thus done in his name, and he shall only be bound by an affirmative ratification." See, also, *Williams* v. *Merritt*, 23 Ill. 623; *Foster* v. *Rockwell*, 104 Mass. 167 ; Story on Agency, sec. 258.

Immediately upon the sale, the same day, appellants were notified by appellees of the sale, the letter informing them, "We sold 5000 bushels No. 2 spring wheat for you to-day, at $1.02½."

Appellants made no reply. They expressed no dissent; and a very good reason why they should not, may be found in the following statement in the letter, that "on 'Change the price was lower, and went to $1.00, and closed at that figure;" thus showing a profit in the contract.

August 7, 11 and 19, appellees sent letters to appellants, informing them of the price of wheat, showing that there was a small profit left for them, at the date of each letter, until that of August 19, when the price had reached $1.03, "seller the year;" but the letter closes with the expression, "that should the receipts be larger next week, we think the advance will be checked." So far, there could be no particular cause for dissatisfaction with the sale; but then came the letter of August 24, informing appellants that the market was still on the advance, and as high as $1.09 was reached, "seller the year." "We have had to put up margins on your sale, and must ask you to place us in funds to take care of the same." Until this time, appellants had expressed no dissent from, or dissatisfaction with, the sale; but now, when a palpable loss becomes manifest, they answer this letter, saying that they did not accept the sale at $1.02½, and refusing to put up margins, as they did not consider they had any contract out.

It is also in evidence that one of the Searings was in Chicago on the 2d of August, at which time there was a profit in the contract for his firm of $375, and he had some conversation in regard to closing it out.

As said in *Foster* v. *Rockwell,* the principal can not lie by and seize the benefit of the agent's conduct if profitable, or renounce it if otherwise, at his election.

It was proved that, according to the custom of trade in Chicago, the parties for whom sales are made on 'Change are

580 SEARING *et al. v.* BUTLER *et al.* [Sept. T.

Opinion of the Court.

not known to the other party; that the commission men trade with each other as though they were the principals.

After the repudiation of the contract of sale by the appellants, the appellees made a settlement of the transaction with the purchaser by the payment of the difference between the purchase price of the wheat and its market value at the time of the settlement.

We perceive no force in the objection which is made, that even if there was a ratification of the contract, there can be no recovery under the declaration as framed.

The point of objection is, that it is laid in the declaration that the plaintiffs were compelled to pay this difference between the purchase price and the market value of the wheat, on the 30th day of December, 1871; whereas, the proof shows that it was at an earlier date when the settlement was made. But this was an immaterial allegation as to time. It had regard to the damages which had been sustained by the plaintiffs, and the day on which they were alleged to have been suffered was not necessary to be proved as laid.

We perceive no error in the record, except in the amount of the recovery.

There is evidence in the case that the settlement referred to was made after the fire in Chicago, in October, on the basis of the resolution adopted by the Board of Trade, at $1.18\frac{7}{8}$; but taking the whole testimony together, it shows very satisfactorily that the settlement was made some time prior to that event, and at a loss to the appellees of no more than ten cents per bushel. The amount of this loss, together with the appellees' commissions of $25 and interest, was all that they were entitled to recover under the evidence, which would be considerably less than the amount recovered.

For this error in the amount of the recovery, the judgment is reversed and the cause remanded. If the plaintiffs below will enter in the court below a *remittitur* of all above the sum of $525, with interest, that court will enter a judgment in favor of said plaintiffs for that sum, with interest, without further trial. *Judgment reversed.*