Bergen v. Keiser.

ELIZABETH A. BERGEN
v.
HENRY KEISER.

HUSBAND AND WIFE.—When a married woman permits her husband to use and control her property she must see that his acts are within the powers given him; and if she knows he has exceeded his authority in dealing with third parties, and the circumstances are such as good faith to them would require her to speak, and she fails to do so, she will be as fully bound by his acts as though they were previously authorized.

APPEAL from the County Court of McLean county; the Hon. R. M. BENJAMIN, Judge, presiding. Opinion filed December 4, 1885.

Messrs. STEVENSON & EWING, for appellant; cited Gilman v. Desbron, 45 Conn. 563 ; Flannery v. Rohrmayer, 46 Conn. 558 ; Jones v. Walker, 63 N. Y. 612; Wilson v. Schuck, 5 Bradwell, 572 ; Geary v. Hennessy, 9 Bradwell, 17 ; Wendt v. Martin, 89 Ill. 139 ; Bliss v. Patton, 5 R. I 379 · Bates' Appeal, 55 Penn. State 356.

Messrs. KERRICK, LUCAS & KERRICK, for appellees ; cited Anderson v. Armstead, 69 Ill. 452 ; Lovell v. Williams, 125 Mass. 347 ; Arnold v. Speers, 130 Mass. 347 : Ewell's Evans on Agency, 23.

CONGER J.    This was an action of assumpsit brought by appellee against appellant for the value of certain machinery purchased by appellant's husband and placed in the mill of appellant. It appears that Mrs. Bergen traded certain property owned by her in Jacksonville for three lots in the village of Minier, with the mill in question upon the east lot, the middle lot vacant, and a dwelling house upon the west lot, in which appellant with her husband and family resided.    In 1880, after making the trade, they moved into the dwelling house and Bergen commenced running the mill.    There was no contract or agreement between them about the mill, except they both say it was understood the whole family was to be supported by the earnings of the mill.    Bergen was insolvent, having no property except $470 worth of corn.    He carried on the milling business under the name of Bergen & Co.    In March, 1882, Bergen visited appellee, who lived at Bloomington, and after some correspondence bought from him a " meal dryer," and appellee afterward came to Minier, put in the " meal dryer," and did other repairing to the mill, amounting in all to $649.82, which by the contract was to be paid for in cash when completed.    Mrs. Bergen testifies that when her husband talked about putting in a meal dryer she objected to it; that she never authorized her husband to purchase it.

The evidence shows that during all the time appellee and his men were engaged in putting in this machinery and otherwise repairing the mill, about fourteen days, Mrs. Bergen was in the mill nearly every day; that her house where she resided was about eighty feet distant; that when appellee came to begin the work appellant was by her husband introduced to him, and that she at one time expressed herself to one of the workmen as being pleased with the work, and during all this time made no objection by word or act to the improvements being placed in the mill.

All the parties to the transaction are presumed to have known the law. Appellee had constructive notice at least that the title to the mill was in Mrs. Bergen, for her deed was upon record, although he says in fact he did not know it. As the improvements were of a permanent character and affixed to the building, she is presumed to have known that they became at once her property.

Assuming that Keiser knew what the record would disclose, would he not have been fully warranted in supposing Bergen was acting as the agent of his wife in ordering the improvements placed upon the property? Finding the husband in possession of the mill he receives from him an order for its repair, and both before and during all the time of making such repair finds the wife, the owner of the mill, present nearly every day of the two weeks occupied in doing the work, not only making no objection, but by her actions leading him to believe that she was entirely satisfied with the whole transaction.

A single word of objection from her to appellee would at once have put him on his guard, and brought things to an issue. He could, upon learning that she was unwilling to either become personally liable, or permit her property to become so, have abandoned the work, or proceeded upon the credit alone of the husband.

Both Mrs. Bergen and her husband knew that he was insolvent; and for this insolvent husband to place the labor and property of appellee, to the extent of $600, in the mill of his wife, knowing he could not pay for it, and she to remain

silent when good faith and common honesty required her to speak, and now ask to be protected from liability because she had not previously and formally authorized her husband to make the contract, would be a fraud which we are unwilling to sanction. We think the true rule in such cases is, when a married woman permits her husband to use and control her property she must see that his acts are within the powers given him, in order that frauds may not be practiced upon others. And if she knows that he has exceeded his authority in dealing with third parties, and the circumstances are such as good faith to them would require her to speak, and she fails to do so, she would be as fully bound by his acts as though they were previously authorized. Anderson v. Armstead, 69 Ill. 452; Lovell v. Williams, 125 Mass. 347; Arnold v. Speer, 130 Mass. 347.

Objection is made to a number of the instructions given for appellee, but the only one we think subject to criticism is the 5th.

There was no evidence upon which to base it, and it should not have been given; but the jury were so fully and fairly instructed by the others that we do not think it could have worked harm to appellant.

The court properly refused Nos. 1 and 2 of appellant's refused instructions, because they entirely exclude the idea of any subsequent ratification of Bergen's acts by his wife. No. 3 was properly refused because it states, "there is no evidence in the case upon which the jury would be authorized to find against the defendant," also the 4th because it states that the fact that appellant knew that her husband was contracting for the machinery would not be sufficient to charge her personally; this was doubtless true, but it was singling out and making prominent certain facts to the exclusion of others, and was therefore misleading.

The 5th was properly refused because it states there is no evidence of Bergen's pecuniary condition, thereby utterly ignoring the evidence of Mrs. Bergen upon that point, and also in stating that Bergen's pecuniary condition was immaterial.

The 6th is still more objectionable as it purports to tell the

jury that a long statement of facts, which are recited, would not be sufficient to charge the defendant. They would all tend to do so, and to thus single out some of the facts relied upon for recovery, and tell the jury they would not authorize a recovery, has been so frequently condemned by the Supreme Court that nothing further need be said in reference to it.

Finding no substantial error in the record and believing that substantial justice has been done, the judgment of the circuit court will be affirmed.

Affirmed.