(No. 24869.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HOWARD O. SCHNEIDER, Plaintiff in Error.

*Opinion filed February 15, 1939.*

RICHOLSON & ANDERSON, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, TAYLOR E. WILHELM, State's Attorney, and A. B. DENNIS, (CHARLES A. HELFRICH, of counsel,) for the People.

Mr. CHIEF JUSTICE SHAW delivered the opinion of the court:

An indictment consisting of three counts was returned against plaintiff in error in the circuit court of LaSalle county. The first two of these counts charged murder by abortion, while the third charged abortion, only. On a trial by a jury the defendant was found guilty of abortion, without any finding on the first two counts. This amounts to an acquittal on the charge of murder (*People* v. *Smithka,* 356 Ill. 624) and our consideration of the case is, therefore, limited to such errors as may be assigned touching the third count of the indictment.

The return of this indictment was accompanied by the return of two others, one charging Bertis Dougherty, the husband of the deceased woman, in the same manner as this defendant was charged, and another charging the husband and this defendant, jointly. The husband pleaded guilty to the charge of abortion in the indictment against him and testified for the People on the trial of the indict-

ment against this defendant. It was the substance of his testimony that Darlene Dougherty had been his wife before her death and that she died November 8, 1937, in a hospital at Ottawa; that he and his wife had two children and that, in the summer of 1937, believed they were about to have another one. He was a bartender and called the defendant in to see him at his tavern, where he explained the situation and requested the defendant to relieve his wife's condition of pregnancy. His testimony was to the effect that he and his wife thereafter made three trips to the defendant's office, one in August and twice at later dates, on each of which occasions the defendant, in the presence of the witness, inserted instruments and performed other acts, the details of which are unimportant to this opinion, and accepted a fee of $45 for his services. The witness further testified that about the end of September, or the first of October, he returned from work and found his wife in bed with a fever and that under the bed he found a fetus in a box which he took out and buried. A doctor was called on November 6, when the situation became desperate, and Darlene Dougherty was taken to a hospital, where she died two days later. Dougherty, in his testimony, displayed some animosity toward the defendant, stating that he "intended to give a rap and take one," but his testimony, on the whole, was substantially corroborated.

By other witnesses and documents it was proved that the deceased was employed on a WPA project and her time-sheets showed when she worked and when she was absent from work. It is clear that on October 28, 1937, she suffered a hemmorrhage and had to be assisted home by one of her co-workers, but returned to work the next day and worked during the first four days of November. This evidence is uncontradicted. The fetus which Dougherty had buried, and which had been exhumed and preserved, was produced on the trial, and there was also expert testimony as to the cause of the death of Darlene Dougherty, but this

is unimportant because of defendant's acquittal on the murder charge. The same statement applies to the expert testimony given by witnesses on behalf of the plaintiff in error, as it also was directed to the cause of death.

In his own behalf, plaintiff in error testified that he was a licensed chiropractor practicing in Ottawa and that his first examination of Darlene Dougherty was for the purpose of determining whether or not she was pregnant; that he made a vaginal examination and did some swabbing with an electrode from a diathermy machine around which he had wrapped some cotton. He denied that he inserted this instrument into the cervix or the womb; that about September 8, he made another examination, repeated the swabbing out process and determined that she was pregnant. He saw her again, alone, the next day, but again denied that the instrument had been inserted, contending that he confined his operations to a harmless process of swabbing out.

It is first contended that a motion to quash should have been sustained because it is said that the indictment joined separate and distinct crimes in the first and second counts, and that the third count did not charge any crime at all. It was held in *Scott* v. *People,* 141 Ill. 195, that where several attempts to bring about an abortion were made on different days, they were all a part of one transaction and not separate offenses. As to the further argument that the abortion and murder by abortion are separate offenses, the same answer applies. It might be possible for a jury to find, as it evidently did in this case, that the abortion was performed, but that there might be some reasonable doubt as to whether it was the cause of death. The argument that the third count failed to charge the commission of a crime is based upon a statement in the brief that it was not alleged in that count that Darlene Dougherty did abort or miscarry. We consider this a misstatement of the record, as the indictment charged that "by the said forcing, thrusting and inserting the said instrument, * * * caused the abortion

and miscarriage of her, the said Darlene Dougherty," etc. The point requires no further notice.

It is urged that the court should not have allowed the witness Dougherty to testify because his name was not endorsed on the back of the indictment. The record shows that Dougherty was a witness at the coroner's inquest, that written notice of the State's attorney's intention to call him was given several days before the trial and that plaintiff in error was not taken by surprise. Inasmuch as Dougherty was not a witness before the grand jury it was not necessary to put his name on the back of the indictment.

The plaintiff in error contends that the judgment of conviction should be reversed because, as he says, it rests upon the uncorroborated testimony of an accomplice, the husband of Darlene Dougherty, who has been indicted and who has pleaded guilty. The contention is barren of merit because practically every fact and circumstance in the record corroborates Dougherty's testimony. Actually, considering the testimony which plaintiff in error himself gave, the conviction would be sustainable if the testimony of Dougherty were entirely disregarded.

Complaint is also made that the court erred in the giving and refusing of instructions. At the close of the case forty-four instructions were offered by the plaintiff in error, twenty-five of which were given. As to the given instructions which are complained of, they refer mostly to the murder charge, as to which the plaintiff in error has been acquitted, and if there was any error in them it is immaterial. Other objections refer to rules for testing the credibility of witnesses and are of a trivial nature and concern points which were fully covered by instructions given for plaintiff in error. None of them were of that type which directs a verdict.

Plaintiff in error has nothing to complain about in the matter of refused instructions. As above noted, twenty-five out of the forty-four which he offered were given, and

this was far in excess of the number required to properly instruct the jury. In the case of *Fisher* v. *Stevens,* 16 Ill. 397, more than eighty years ago, we pointed out that the right to demand instructions must have some limit and that we were not, at that time, disposed to sanction an abuse of the privilege. We are no more ready to do so now. When a defendant requests such an excessive number of instructions as to make it impossible for the trial court to give them proper consideration, he places himself in the position of inviting error, and of such he cannot complain.

An examination of the evidence in the case makes it clear that the defendant was proved guilty beyond any reasonable doubt, and an examination of all of the instructions given makes it equally clear that the jury was fully and fairly instructed as to the law.

The judgment of the circuit court of LaSalle county is affirmed.

*Judgment affirmed.*